EDELMIRO MARTÍNEZ RIVERA, Appellant and Appellee, v. JUAN T. PEÑAGARÍCANO, ADMINISTRATOR, ETC., Appellee and Appellant.

No. CE-63-2.    Decided June 5, 1964.

530

*José Iglesias La Cruz, Nieves M. Agostini de Torres,* and *Miguel Franquiz Ventura* for appellant. *Edelmiro Martínez Rivera, pro se* and *Edelmiro Martínez, Jr.,* for appellee.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The question for decision in this case is whether a property owner has the right to request the Economic Stabilization Administrator to consider, in fixing the reasonable rent, the value of the buildings demolished for the purpose of erecting a new one, either by applying to the buildings demolished the market value thereof, the original cost of acquisition with or without depreciation, or any test of valuation. This Court had given a negative reply in the judgment without opinion rendered on June 29, 1960, *Mejías* v. *Superior Court*; *Smith, Int.*, No. 2217. In the order of July 31, 1962, now on review, the trial court answered the same in the affirmative and recognized such right to the property owner, stating:

"In above-entitled case the Administrator did not allow rental value for the cost of the buildings which the landlord was compelled to demolish on the assumption that only the cost of demolition rather than the cost of the building should be credited. The court concludes that § 186 of 17 L.P.R.A. orders the Administrator to fix the rent in this type of cases on the basis of the cost of construction of the building. It is obvious that the cost of the building which it was necessary to demolish is part of the cost of construction, irrespective of the period elapsing between the acquisition of the old building and its demolition."

The facts in the record show that Edelmiro Martínez Rivera, appellant herein, built in 1956 a three-story building on a lot of 443.69 square meters formed by grouping it with another, situated on Loíza Street corner of Las Flores Street. On that lot appellant owned two buildings acquired in 1945, one of which was remodelled and reconstructed in 1947, and both devoted to commercial purposes, which he destroyed in order to build a new building. Appellant appraised the demolished buildings at the market value of some $20,000. This value, he insists, should have been taken into consideration by the Administrator in fixing the reasonable rent of the new building.

Section 6 of the Reasonable Rents Act—No. 464 of April 25, 1946 (Sess. Laws, p. 1326), as amended by Act No. 88 of June 21, 1955 (Sess. Laws, p. 368)—provides:

"If the dwelling or building was constructed after October 1, 1942, the Administrator shall fix the reasonable rent on the basis of the cost of construction of said dwelling or building; It being understood that in no case shall the reasonable rent, as computed for one year, exceed twelve (12) per cent of the cost of the works."

■■■ The lawmaker did not define the term "cost of construction" or determine its content. In the exercise of the supplementary regulatory power conferred to him by § 5(d) of the Act, the Administrator provided, to govern in situations such as this—17 R.&R.P.R. § 186-6—that in the case of buildings built subsequent to October 1, 1942, the maximum rent shall not exceed 12 percent annually of the cost of construction *of the structure*, plus the value of the lot. He defined cost of construction as the amount spent by the person who built the structure, without including the price paid in any of the subsequent sales. He then prescribed certain methods of proof on the part of the property owner to establish the cost of construction, all of which refer to *the work* itself, including a cost estimated by the Administrator in the absence of evidence of the landlord. Regarding the value of the lot for the purpose of fixing the rent, the regulation provided that it is the cost of acquisition appearing from the deed, or of the assessment for tax purposes raised to 100 percent, whichever is greater. In fixing the reasonable rent in this case, the Administrator included the assessed value of the lot raised to 100 percent. He also included the cost of demolition of the buildings. He refused to include the cost of those structures, and appellant complains of this.

The Reasonable Rents Act provides that the reasonable rent of a building built subsequent to October 1, 1942, shall be fixed on the basis of the cost of construction. Otherwise

stated, it provides that the rent shall not exceed 12 percent of the cost of *the works*. Considering the economic principles which are controlling in the philosophy of this legislation, the cost of the lot built on, whether it is already owned and is vacant, or is acquired for that purpose, or it is cleared of buildings constructed thereon in order to build others, may be properly included in the concept of construction. The obvious reason for this is that the lot represents an economic value to the property owner which continues to be invested and used in the building, and, therefore, it should be taken into consideration in fixing a reasonable rent. Otherwise, or if the Act has not been thus administratively enforced and the consideration of that cost were omitted, it is likely that such action may be unconstitutional.

The manner in which the Administrator assessed the lot in this case pursuant to regulatory provisions, absent the cost in the deed, using the assessed valuation and raising it to 100 percent, is acceptable. We had already recognized it in the judgment *supra*. It is known that under the legislation on scientific assessment for the purposes of real-property taxation, the property must be assessed at its real and actual market value.

Appellant is not right in expecting the Administrator to include, in fixing the reasonable rent, the cost of the buildings owned by him and which he voluntarily demolished in order to build a more productive one. Under the economic philosophy of the Reasonable Rents Act, the reason is also obvious. The buildings demolished do not represent any economic value to the property owner which subsists or is being used to produce rent. If we examine the Act in its entirety, we see that it constitutes fundamentally the State's intervention for a necessary public purpose. The rent was frozen as of October 1, 1942, irrespective of the original investment, and standards of usefulness or service afforded to the tenant prevail in its provisions for the purposes of reasonability of

a rent. As an illustration of what has been said, in the case at bar appellant would receive rent in an additional amount of $200 monthly or $2,400 annually, at the rate of 12 percent of an economic value of $20,000 which he alleges represents the demolished buildings, an economic value which neither exists nor is useful at all to the tenants, with the added benefit that, it being nonexistent, the property owner would not suffer depreciation of this value nor would have to reinvest in its conservation, nor pay property tax.

■ The purpose of the Reasonable Rents Act is to provide a reasonable income from rent produced by economic values used and to offer services to the tenant, for the protection of the community against speculation by a landlord wishing to obtain greater yield than that which is fair and reasonable in proportion to that usefulness and services which he offers, not only in a situation of shortage of housing or of premises but also in view of the tendency toward inflation and speculation in economic values prevailing in commerce.

■ Within those strict standards of the Act, the courts cannot take liberties to tax the concept of regulation by including economic values, for the purpose of fixing the reasonable rent, which do not exist or are not useful to the tenant and undesired by the lawmaker.

Appellant places emphasis on a criterion stated by the Administrator, which does not form part of his regulation with force of law and which at most is but an argument, according to which in those cases in which the lot has been acquired together with the building with the preconceived purpose of demolishing the same and erecting a new building, the cost of the building acquired may be taken into consideration by including the same as part of the cost of the lot, while in those cases in which the lot and the building have already been possessed by the property owner, who has received rent or usefulness therefrom—as is the fact in the

case at bar— the value of the buildings demolished is not taken into consideration. Possibly that criterion is based on, and has some analogy with, certain provisions of § 118 of Regulation No. 1 of the Income Tax Act of 1925, as to when the value of a building demolished is deductible as a loss in a particular taxable year, and when such value to be considered is capitalizable and nondeductible. The Income Tax Act of 1954 contains a similar provision.[1]

Regardless of the need or rationale of those criteria for tax purposes, the same are not applicable under the system of the Reasonable Rents Act. If the property owner, without obligation to do so elects to demolish structures in order to reconstruct with a view to greater profit or usefulness of the property, the value of the structures demolished, whether the market value, the original cost with or without depreciation, or any other test of valuation, cannot be taken into consideration for the purpose of fixing the reasonable rent of the new structure.

■ If there were general considerations of some other kind to warrant the right of a property owner to receive rent included in the reasonable rent, by way of compensation, of the value of the structures which are not used by the tenant, the granting of such compensation would rest with the

---

[1] "Section 3023 (e)–2. *Voluntary removal of buildings.*—Loss due to the voluntary removal or demolition of old buildings, the scrapping of old machinery, equipment, etc., incident to renewals and replacement, is deductible from gross income. When a taxpayer buys real estate upon which is located a building, which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building."

See a brief discussion of these standards, for tax purposes, in 2 Meléndez Carrucini, *Manual de Ganancias y Pérdidas de Capital* 737 et seq.; and see *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 831 (1949), and *López de la Rosa* v. *Tax Court,* 66 P.R.R. 319 (1946).

lawmaker, if he deems it of public interest, rather than with the courts.

For, the reasons stated, the order of the San Juan Part of the Superior Court, object of this petition directing the Administrator to include in the determination of the reasonable rent in this case the cost of the structures demolished by appellant in order to erect a new one, is set aside.

Mr. Justice Blanco Lugo dissented in a separate opinion in which Mr. Justice Rigau, Mr. Justice Dávila, and Mr. Justice Ramírez Bages concur.

—O—

Mr. Justice Blanco Lugo, with whom Mr. Justice Rigau, Mr. Justice Dávila, and Mr. Justice Ramírez Bages concur, dissenting.

San Juan, Puerto Rico, June 5, 1964

I share the preoccupation voiced in the majority opinion aimed at preventing that economic values extraneous to the cost of construction be taken into consideration in fixing rents. Such is the philosophy underlying the legislative criterion, and it deserves our deference. However, I cannot subscribe to certain assertions made in that opinion. Briefly stated, they are two: (1) That the cost of the buildings demolished in order to construct a new one should not be taken into consideration *in any case* for the purpose of establishing the cost of construction of the latter; and (2) that, for tax purposes, the cost of the lot, raised to its totality, be used *in all cases* as element for the purpose of establishing the cost of construction.

Regarding the cost of the buildings demolished, I believe that it is proper to grant the historical cost thereof, namely, the value assigned when the lot and the building was acquired. Only then would this prevent causing patrimonial deterioration to the builder in the computation of the reason-

able yield. His investment certainly is not only the cost of the lot but also that of the building which he demolishes in order to make better economic use of the lot. In this sense the cost of the building is merged with that of the lot.

I agree that it is proper to include the cost of the lot in the cost of construction. However, there is no provision authorizing the Administrator to consider therefor the market value thereof, even fixing the same on the basis of the assessment for tax purposes.[1] Contrary to the situation in connection with buildings demolished, this regulation grants to the property owner a value to which he is not entitled in the fixing of the rent. It is known that the lot market in Puerto Rico responds to a standard of ascending spiral.[2] I maintain that the property owner should receive only the yield corresponding to his investment, which is but the cost of acquisition. There is no justification for granting to him as element of cost an increase in value which responds to certain economic realities extraneous to *his investment*.

It appears clearly that the majority opinion applies a double standard.

---

[1] In *People* v. *Amadeo*, 82 P.R.R. 98 (1961), we held that the official determinations regarding the valuation for the purposes of property taxation do not constitute admissible evidence of the market value in condemnation proceedings.

[2] Negrón García, Luis, *Impacto del Aumento en el Costo de las Tierras en Puerto Rico: La Administración de Terrenos como Instrumento del Urbanismo*, XXXII *Rev. Jur. U.P.R.* 451 (1963).